## ATTORNEY GENERAL v RAGUCKAS

Docket No. 31216. Submitted March 8, 1978, at Lansing.—Decided July 14, 1978. Leave to appeal applied for.

The Attorney General brought an action against Jonas Raguckas, D. C., and Marie Raguckas, D. C., licensed chiropractors, to enjoin them from the unauthorized practice of medicine. Specifically, the acts complained of were the dispensing of drugs and the use of acupuncture. The Michigan Chiropractic Council intervened as a plaintiff. The Attorney General also brought an action against Gerald J. Hall charging him with unauthorized diagnosis. The two cases were consolidated and tried together. The Ingham Circuit Court, Thomas L. Brown, J., granted summary judgment in favor of plaintiff and issued an injunction prohibiting defendants from dispensing drugs, performing acupuncture, and performing diagnostic tests other than those authorized by statute. Defendants Raguckas appeal. *Held:*

1. The action was properly brought in the circuit court. The doctrine of "primary jurisdiction", which would bar a suit until after review of the matter by the proper administrative agency, is not applicable under the circumstances of the case.

2. Chiropractors, as a matter of law, are not authorized to dispense drugs to their patients or to practice acupuncture.

3. Two portions of the injunctive order dealing with diagnostic procedures and advertising applied only to defendant Hall who has taken no appeal. Because those portions do not apply to the appellants, they are set aside.

Affirmed in part, reversed in part.

1. Administrative Law—Courts—Jurisdiction—Primary Jurisdiction—Judge's Discretion.

Application of the doctrine of "primary jurisdiction", which operates to bar a suit until after the proper administrative agency has reviewed the matter, is largely discretionary with the trial

References for Points in Headnotes

[1] 2 Am Jur 2d, Administrative Law §§ 596, 788–797.

The doctrine of primary administrative jurisdiction—Supreme Court cases. 1 L Ed 2d 1596.

[2–4] 61 Am Jur 2d Physicians, Surgeons, and Other Healers § 23.

judge; exceptions to the doctrine are recognized when the situation requires immediate equitable intervention or where administrative remedies are not sufficient.

2. COURTS—CIRCUIT COURT—JURISDICTION—ADMINISTRATIVE LAW— CHIROPRACTORS—UNAUTHORIZED PRACTICE OF MEDICINE.

A suit to enjoin the unauthorized practice of medicine by chiropractors was properly commenced in circuit court without first referring the matter to the Board of Chiropractic Examiners where that board had already expressed an opinion in respect to the use of the techniques at issue, an opinion that appears to conflict with the statutory and common law definition of the chiropractic profession, where the activity complained of created an imminent threat to the general public, and where one of the chiropractors involved, and her attorney, are both members of the Board of Chiropractic Examiners.

3. PHYSICIANS AND SURGEONS—CHIROPRACTORS—DISPENSING OF DRUGS —STATUTES.

Chiropractors, as a matter of law, are not authorized to dispense drugs to their patients; such an authorization is not intended in the language of a statute regulating the practice of chiropractic which includes within the practice "procedure preparatory to" the manual adjustment of vertebrae (MCL 338.156; MSA 14.596).

4. PHYSICIANS AND SURGEONS—CHIROPRACTORS—ACUPUNCTURE.

Chiropractors, as a matter of law, are not authorized to perform acupuncture.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Patrick F. Isom,* Assistant Attorney General, for plaintiff.

*Farhat, Burns & Story* (by *Vittorio E. Porco),* for the Michigan Chiropractic Council.

*Durant & Card,* for defendants.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and S. EVERETT,* JJ.

PER CURIAM. Plaintiff Attorney General com-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

menced this action in Ingham County Circuit Court on September 4, 1975, seeking to enjoin defendants, licensed chiropractors in Garden City, from performing certain acts allegedly outside the scope of their profession. These acts included the dispensing of drugs and the use of acupuncture. Plaintiff contends that the aforesaid conduct amounted to the unlicensed practice of medicine and constituted a public nuisance which should be enjoined.

Defendants responded to plaintiff's complaint, admitting that they dispensed drugs and performed acupuncture in treating their patients. However, defendants contended that such techniques were within the scope of chiropractic and that the scope of the chiropractic profession should be determined by the State Board of Chiropractic Examiners.

On November 24, 1976, the trial court issued a final order granting plaintiff's motion for summary judgment and also issued a permanent injunction prohibiting defendants from dispensing drugs, performing acupuncture, and performing any diagnostic tests on patients except such tests as set forth in the Michigan chiropractic act. MCL 338.156; MSA 14.596. The Michigan Chiropractic Council intervened in the case by stipulation and order. Defendants now appeal as of right challenging the validity of the injunction.

## I. JURISDICTION

Defendants first contend that plaintiff did not possess the authority to maintain the current action since the doctrine of "primary jurisdiction" prohibits such a suit until the proper administrative agency has reviewed the matter. The "pri-

mary jurisdiction" doctrine was set forth by this Court in *White Lake Improvement Association v Whitehall,* 22 Mich App 262, 280–282; 177 NW2d 473 (1970):

"The primary jurisdiction doctrine has been explained as follows:

" 'In cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts for specialization, by insight gained through experience, and by more flexible procedure.' *Far East Conference v United States,* 342 US 570, 574, 575; 72 S Ct 492; 96 L Ed 576 (1952).

\* \* \*

" 'The principal reason behind the doctrine of primary jurisdiction is not and never has been the idea that "administrative expertise" requires a transfer of power from courts to agencies, although the idea of administrative expertise does to some extent contribute to the doctrine. *The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts.* Whether the agency happens to be expert or not, a court should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's continuous regulation may become the victims of uncoordinated and conflicting requirements.' 3 Davis, Administrative Law Treatise, § 19.01, p 5."

As thus defined, "primary jurisdiction" is a flexible doctrine whose invocation is largely discretionary with the trial judge. Exceptions to the doctrine are recognized when the situation requires immediate equitable intervention or where the administrative remedies are not sufficient to give plaintiff the relief to which he or she is entitled. Such, we believe, is the case in the instant matter.

Abstention by the trial court while the Board of Chiropractic Examiners reviewed the scope of the chiropractic profession would accomplish very little. The Board of Chiropractic Examiners has already issued memoranda indicating that acupuncture is within the scope of the chiropractic act. MCL 338.157; MSA 14.597. The board had also indicated that it is their belief that a chiropractor may administer non-narcotic chemicals when treating a patient in order to suppress pain or render the spine and its surrounding bones and tissues more amenable to successful manipulative treatment. Hence, the Board of Chiropractic Examiners had already expressed their opinion in respect to the use by chiropractors of the techniques at issue in the instant case.

However, the board's views in respect to these procedures appear to be in conflict with the statutory and common-law definition of the chiropractic profession. Accordingly, the present case is ripe for adjudication by the courts. It should also be noted that plaintiffs' complaint alleged that defendants were engaged in the unauthorized practice of medicine contrary to MCL 338.1816(2); MSA 14.542(16)(2). Such activity created an imminent threat to the general public and warrants immediate equitable intervention if the requisite proofs are established by the complaining party.[1] Further,

---

[1] The trial court concluded and we agree that plaintiffs did in fact establish a prima facie case for immediate equitable relief.

defendant Marie Raguckas and the attorney who represented her in the trial court proceedings each are members of the Board of Chiropractic Examiners. To refer the scope of practice issue back to the board under the doctrine of primary jurisdiction is at best questionable. Accordingly, it is the opinion of this Court that the current suit was properly commenced in Ingham County Circuit Court.

## II. DISPENSATION OF PRESCRIPTION DRUGS

Defendants next contend that the trial court improperly interpreted the Michigan chiropractic act, MCL 338.156; MSA 14.596, in ruling that the act did not authorize chiropractors to dispense drugs or to perform acupuncture.

"The license provided for in this act shall entitle the holder thereof to practice chiropractic in the state of Michigan, and for the purpose of this act chiropractic is defined as 'the locating of misaligned or displaced vertebrae of the human spine, *the procedure* preparatory to and the adjustment by hand of such misaligned or displaced vertebrae and surrounding bones or tissues for the restoration and maintenance of health.' A licensed doctor of chiropractic under this act may use x-ray and such analytical instruments as are approved by the Michigan board of chiropractic examiners in the examination of patients solely for the purpose of locating misaligned or displaced vertebrae of the human spine and for the procedures preparatory thereto.

"The terms 'chiropractic', 'doctor of chiropractic', 'chiropractor' and 'all licensed doctors of chiropractic' mean a practitioner of chiropractic as defined in this act." MCL 338.156; MSA 14.596 (Emphasis supplied.)

Defendants argue that the words "procedures preparatory to" indicate that a chiropractor can dispense drugs in order to prepare a patient for treatment. Such an inference lacks merit on the

basis of several grounds. The pharmacy act states that, unless a pharmacist's license is obtained, no one but physicians, dentists and veterinarians may prescribe drugs. MCL 338.1128; MSA 14.757(28). Since the term "physician" is not used anywhere within the chiropractic act, it logically follows that chiropractors were not intended to be able to dispense drugs. In addition, the Legislature could have easily specifically authorized chiropractors to dispense drugs, as was done in the case of osteopaths, MCL 338.101a(c); MSA 14.571(1)(c), but failed to do so.

Defendants' position that they should be permitted to dispense drugs is directly contrary to the philosophical foundation of the chiropractic profession. The Michigan statutory definition is in accord with the universally accepted view that the chiropractic profession is limited to the manual adjustment of the spine. Drugs play no part in the chiropractor's approach to health.

"Although the doctor of chiropractic recognizes the place for drugs and surgery in therapeutics, he does not employ those procedures. As the result of his clinical experiences, he knows that the chiropractic approach offers successful results in a wide range of illnesses." Dr. Julius Dintenfass, *Chiropractic: A Modern Way to Health* (New York 1970), p 78.

"Medical doctors, though under no compulsion to do so, rely chiefly upon drugs and surgery in ministering to the sick. Though there are notable exceptions, they tend for the most part to be either apathetic and skeptical or frankly antagonistic to the use of manipulation as a curative agent.

"Doctors of osteopathy, on the other hand, while they too are trained and licensed to prescribe drugs and to perform surgical operations, also make use of manipulative procedures.

"In contrast to both of these kinds of doctor, the

doctor of chiropractic gives no medicine and practices no surgery. This is not because he feels that he has the answer to *every* health problem and believes that drugs and surgery are never necessary. It is because he is convinced that the chiropractic way offers safest, sanest, and most promising approach to the great majority of human ailments. He is trained to recognize those conditions which cannot be expected to respond successfully to this approach and when he encounters them, promptly refers the patient to some other kind of doctor. This leaves him free to give his undivided attention to the science and art of chiropractic, a field sufficiently complex and challenging to merit such specialization." Dr. Julius Dintenfass, *Opportunities in a Chiropractic Career* (New York 1967), p 8.

"Chiropractic has been variously defined as a drugless method of treating human ailments, chiefly by manipulations of the spinal column with the hands, or as the science of palpating, analysing, and adjusting the articulations of the human spinal column and adjacent tissues by hand." 58 ALR3d 590.

It is the conclusion of this Court that the Legislature of this state intended to authorize the practices of chiropractic as generally recognized and understood. The contention that the statutory language "procedure preparatory to "manual adjustment authorizes the chiropractor to dispense drugs is violative of the intent of the Michigan Legislature. A logical extension of this argument would allow chiropractors to do anything as long as it was somehow "preparatory to" the manual adjustment of spinal vertebrae. Accordingly, we rule, as a matter of law, that chiropractors are not authorized to dispense drugs to their patients.

### III. ACUPUNCTURE

Courts from several jurisdictions have ruled that a general license to practice medicine is required

before one may engage in the practice of acupuncture. *State v Rich,* 44 Ohio St 2d 195; 73 Ohio 2d 487; 339 NE2d 630 (1975), *Louisiana State Board of Medical Examiners v Moran,* 290 So 2d 383 (La App 1974), *State v Won,* 19 Or App 580; 528 P2d 594 (1974), *Commonwealth v Schatzberg,* 29 Pa Comm 426; 371 A2d 544 (1977). Risks involved in the practice of acupuncture by nonphysicians have been identified as improper use of needles leading to infection, bruising, needles breaking in the body, delay in diagnosis and serious illnesses. The penetration of the skin with needles is a surgical act. Note, *Regulating the Practice of Acupuncture: Recent Developments in California,* 7 UCD L Rev 385, 391–392, 396 (1974). Further, the majority of state licensing boards addressing the question consider acupuncture as the practice of medicine or osteopathy. Two states, Indiana and Kansas, forbid the use of acupuncture by licensed physicians. Pisani, *Acupuncture: The Practice of Medicine?* 38 Albany Law Rev 633 (1974).

The issue of the right of a chiropractor to perform acupuncture has been addressed in several states. All decisions have denied the right. *State v Won, supra, Commonwealth v Schatzberg, supra, State v Rich, supra.* The Pennsylvania decision is particularly pertinent since that state's statutory definition of chiropractic, like Michigan's, includes "preparatory to" language. Defendant's excellent and comprehensive brief does not cite nor have we discovered any authority to the contrary. We thus conclude that as a matter of law a chiropractor is not authorized to perform acupuncture in this state.

## IV. Diagnosis

At the trial court proceedings two civil cases

were consolidated and tried together. One case involved defendants herein who were charged with dispensing the prescription drug Darvon and performing acupuncture. The second case charged one Gerald J. Hall with engaging in unauthorized diagnosis by drawing blood samples, taking blood pressure, and performing "breast and pap" tests to detect cancer. The trial court's written opinion dated June 3, 1976, concluded by enjoining all defendants from "performing any diagnostic tests on patients, including 'pap and breast' tests and blood pressure tests, except such tests as are expressly and specifically set forth in the chiropractic act, MCL 338.156; MSA 14.596". Subsequent to the opinion of June 3, 1976, the case of defendants herein was severed from that of Gerald J. Hall who moved from Michigan, forfeited his license as a chiropractor and has taken no appeal to this Court. Nevertheless, the order dated November 24, 1976, from which the instant appeal is taken, in addition to enjoining appellants herein from dispensing drugs and performing acupuncture, enjoins appellants from performing diagnostic tests in language precisely the same as appears in the June 3, 1976, opinion.

We find nothing wrong with paragraph 3 of the order per se. The problem is that the two defendants in this appeal were not performing any of the alleged improper diagnoses. Chiropractors must use some diagnostic procedures, provided such procedures are within the scope of practice permitted by the chiropractic act. *Janssen v Mulder,* 232 Mich 183; 205 NW 159 (1925). See also *Bauer v State,* 267 SC 224; 227 SE2d 195 (1976). The real question is what diagnostic tests exceed the statute. The instant record is totally inadequate to justify discussion in this case of the scope of diag-

nostic methods of chiropractic medicine. That issue should properly be decided on an adequate record involving practitioners charged with exceeding the statutory authority. In this case Jonas and Marie Raguckas were not so charged. Because they were not so charged and nothing in the record suggests that, as to them, improper diagnosis was conducted, paragraph number 3 on page 2 of the injunctive order is set aside. For the same reasons, paragraph number 5 enjoining defendants from advertising is set aside. In all other respects the order of summary judgment and injunctive order dated November 24, 1976, is approved.

Affirmed in part, reversed in part in accordance with this opinion. No costs, a public question being involved.