ATTORNEY GENERAL v RECORDER'S COURT JUDGE

(PEOPLE v BOVEE)

Docket No. 78-2635. Submitted May 4, 1979, at Detroit.—Decided
August 21, 1979. Leave to appeal denied, 407 Mich —.

John L. Bovee, a licensed chiropractor, was indicted in 1977 by a
Wayne County citizens grand jury on three counts of obtaining
money under false pretenses and 17 counts of practicing medi-
cine without a license. At the preliminary examination in
Detroit Recorder's Court, J. Patrick Denis, J., one count of
practicing medicine without a licence was dismissed on motion
of the Attorney General. The evidence at the preliminary
examination showed that Dr. Bovee had instructed his billing
agent to bill Medicaid for an office visit with two manipulations
upon submission of a services rendered slip. The billing agent
testified that Medicaid was never billed unless she received a
services rendered slip from Dr. Bovee's office. Medicaid sent
itemized invoices to Dr. Bovee along with warrants well in
excess of $100 to pay for these services. Eleven patients upon
whose behalf Medicaid made payments to Dr. Bovee testified,
seven of whom denied receiving any kind of treatment, and
three of whom stated that he, at most, had touched their
shoulders or patted them on the back. There was also testi-
mony that Dr. Bovee gave patients medicines and pills for
colds, headaches, pain, and nasal congestion and topical medi-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 21 Am Jur 2d, Criminal Law §§ 443, 449, 450.

[2, 3] 5 Am Jur 2d, Appeal and Error § 772 *et seq.*
  20 Am Jur 2d, Courts § 111 *et seq.*
  52 Am Jur 2d, Mandamus § 351.

[4, 5] 32 Am Jur 2d, False Pretenses § 32 *et seq.*
  Criminal prosecution or disciplinary action against medical practi-
    tioner for fraud in connection with claims under Medicard,
    Medicare, or similar welfare program for providing medical ser-
    vices. 50 ALR3d 549.

[5] 79 Am Jur 2d, Welfare Laws § 38.

[6-9] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers, §§ 20,
  23, 78 *et seq.*
  Practicing medicine, surgery, dentistry, optometry, podiatry, or
    other healing arts without license as separate or continuing
    offense. 99 ALR2d 654.

cine for rash and a scrape on the arm, gave injections, and took throat cultures and urine and blood samples. Upon these proofs, the magistrate dismissed the remaining counts, holding that the evidence failed to link Dr. Bovee with the crime of obtaining money under false pretenses and that the crime of practicing medicine without a license had not been shown.

The Attorney General filed a complaint for superintending control requesting that the magistrate be ordered to bind Dr. Bovee over on the 19 counts. The Wayne Circuit Court, Richard D. Dunn, J., issued an order requiring the magistrate to bind Dr. Bovee over for trial on the three counts of obtaining money under false pretenses but affirming the dismissal of the charges of practicing medicine without a license. Dr. Bovee appeals from that portion of the order requiring that he be bound over for trial, while the Attorney General cross-appeals from the dismissal of that portion of the complaint for superintending control relative to the charges of practicing medicine without a license. *Held:*

1. A superintending court does not substitute its judgment or discretion for that of the magistrate. The superintending court examines the record made before the magistrate to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty. If such a failure is found, the superintending court should order the magistrate to perform his duty.

2. The grant or denial of an order of superintending control is within the discretion of the trial court. Absent an abuse of discretion, the determination of the trial court will not be disturbed by the Court of Appeals.

3. It was an abuse of discretion for the magistrate to refuse to bind over Dr. Bovee on the counts charging him with obtaining money under false pretenses. The proofs clearly established the elements of a false pretense and an accomplished fraud, and the element of intent to defraud could reasonably be inferred from the evidence relating to the billing procedures. The circuit court therefore properly granted the order of superintending control with respect to the false pretenses counts.

4. The giving of medicine or pills, the administering of injections and the taking of throat cultures and blood and urine samples are activities which constituted the practice of medicine within the meaning of the now repealed Medical Practice Act. A chiropractor could be prosecuted under that act for the felony of practicing medicine without a license unless such activities were authorized by the license issued pursuant to the

now repealed chiropractic act. Since such activities were not procedures preparatory to spinal manipulation within the meaning of the now repealed chiropractic act, they were not activities authorized by the license issued pursuant to the chiropractic act.

5. A constitutional challenge on the ground of vagueness to the language in the chiropractic act defining chiropractic as including procedures preparatory to manual adjustment of the spine is inapposite where the proofs establish that the activities in question were in no way preparatory to a manual adjustment of the spine.

6. The scope of chiropractic practice as defined by the now repealed chiropractic act could not be expanded by resolution by the chiropractic board.

7. The circuit court erred in denying an order of superintending control ordering the magistrate to bind over Dr. Bovee on those counts for practicing medicine without a license in which it is alleged that Dr. Bovee gave pills or medicine, gave injections or took throat cultures or blood or urine samples.

Affirmed in part and reversed in part.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE.

The prosecution is required to show at the preliminary examination that a crime has been committed and that there is probable cause to believe that the accused is guilty of having committed that crime.

2. MANDAMUS — SUPERINTENDING CONTROL — RECORD — DISCRETION — CLEAR LEGAL DUTY.

A superintending court in reviewing a decision of a magistrate does not substitute its judgment or discretion for that of the magistrate; rather, it examines the record made before the magistrate to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty, and if such failure is found, the superintending court orders the magistrate to perform his duty.

3. APPEAL AND ERROR — ORDER OF SUPERINTENDING CONTROL — DISCRETION.

The grant or denial of an order of superintending control is within the discretion of the trial court and, absent an abuse of discretion, will not be disturbed by the Court of Appeals.

4. FALSE PRETENSES — ELEMENTS OF CRIME.

The elements of the crime of false pretenses are: (1) the intent to defraud, (2) the false pretense, and (3) the fraud accomplished.

5. APPEAL AND ERROR — FALSE PRETENSES — MAGISTRATES — DISCRE-
   TION.

   It was an abuse of discretion for a magistrate to fail to bind over
   a chiropractor on charges of obtaining money under false
   pretenses where the proofs established that billings were sub-
   mitted to Medicaid for services not rendered, that payments
   were made by Medicaid pursuant to those billings, and that the
   billings were made by the billing agent pursuant to "services
   rendered" slips received from the chiropractor.

6. PHYSICIANS AND SURGEONS — PRACTICE OF MEDICINE — PRACTICE
   WITHOUT LICENSE — CHIROPRACTORS — CRIMINAL LIABILITY —
   STATUTES.

   Giving medicine or pills for colds, headaches, pain and nasal
   congestion and topical medicine for rash and scraped arms,
   administering injections and taking throat cultures and blood
   and urine samples are activities which constituted the practice
   of medicine within the meaning of the now repealed Medical
   Practice Act; thus, a chiropractor could be prosecuted under
   that act for the felony of practicing medicine without a license
   unless such activities were authorized by the license issued
   pursuant to the now repealed chiropractic act (MCL
   388.1802[g], 338.1816[2]; MSA 14.542[2][g], 14.542[16][2]).

7. PHYSICIANS AND SURGEONS — CHIROPRACTORS — DRUGS — INJEC-
   TIONS — FLUID SAMPLES — STATUTES.

   The giving of medicine or pills, the administering of injections,
   and the taking of throat cultures and blood and urine samples
   were not procedures preparatory to spinal manipulation within
   the meaning of the now repealed chiropractic act (MCL
   338.156; MSA 14.596).

8. CONSTITUTIONAL LAW — CHIROPRACTIC ACT — VAGUENESS —
   STANDING.

   A challenge on the constitutional ground of vagueness to the
   language in the now repealed chiropractic act defining chiro-
   practic as including procedures preparatory to manual adjust-
   ment of the spine is inapposite where the proofs establish that
   the activities in question were in no way preparatory to a
   manual adjustment of the spine.

9. PHYSICIANS AND SURGEONS — CHIROPRACTIC ACT — SCOPE — CHI-
   ROPRACTIC BOARD.

   The scope of chiropractic practice was defined by the now re-
   pealed chiropractic act and the chiropractic board was without
   authority to expand that definition by resolution.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Max R. Hoffman, Jr.* and *Robert W. Kasperek,* Assistants Attorney General, for plaintiff.

*Lippitt, Harrison, Perlove, Friedman & Zack,* for John L. Bovee.

Before: J. H. GILLIS, P.J., and BEASLEY and R. B. WEBSTER,* JJ.

J. H. GILLIS, P.J. Appellant, a licensed chiropractor, was indicted by a Wayne County citizens grand jury on August 23, 1977. The indictment charged Dr. Bovee with three counts of obtaining money under false pretenses in an amount greater than $100, MCL 750.218; MSA 28.415, and 17 counts of practicing medicine without a license, MCL 338.1816(2); MSA 14.542(16)(2).

During the preliminary examination one count was dismissed upon motion of the attorney general. The magistrate dismissed the remaining counts, ruling that the evidence failed to link Dr. Bovee with the crime of obtaining money under false pretenses and that the crime of practicing medicine without a license had not been shown.

A complaint for superintending control was filed with the Wayne County Circuit Court requesting that the magistrate be ordered to bind Dr. Bovee over for trial on the 19 counts. An order was issued requiring the magistrate to bind Dr. Bovee over for trial on the three counts of obtaining money under false pretenses but affirming the dismissal of the charges for practicing medicine without a license.

Appellant appeals that portion of the order re-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

quiring that he be bound over for trial. The attorney general has cross-appealed seeking to have the charges for practicing medicine without a license reinstated.

At the preliminary examination, the people are required to show that a crime has been committed and that there is probable cause to believe that the accused is guilty of having committed that crime. *People v Duncan,* 388 Mich 489; 201 NW2d 629 (1972), *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971).

In reviewing the decision of the magistrate, the superintending court does not substitute its judgment or discretion for that of the magistrate; rather, it examines the record to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty. If such is the case, the superintending court orders the magistrate to perform his duty. *People v Flint Municipal Judge,* 383 Mich 429; 175 NW2d 750 (1970).

The grant or denial of an order of superintending control is within the discretion of the trial court and, absent an abuse of discretion, will not be disturbed by this Court on appeal. *People v East Lansing Municipal Judge,* 42 Mich App 32; 201 NW2d 318 (1972).

# I

## Obtaining Money Under False Pretenses

The evidence submitted at the preliminary examination indicates that Medicaid will only reimburse two services rendered by chiropractors; an office visit with one manipulation and an office visit with two or more manipulations, where subluxations of the spine are demonstrable by x-ray.

Dr. Bovee hired a billing agent to do his Medicaid billings. After discussing which services were covered by Medicaid, he instructed the billing agent that upon submission of a services rendered slip Medicaid should be billed for an office visit with two manipulations unless otherwise indicated. The billing agent, Karen Fair, testified that she never submitted a bill to Medicaid unless she received a services rendered slip from Dr. Bovee's office.

Additional evidence was presented showing that Medicaid sent itemized invoices to Dr. Bovee along with warrants well in excess of $100 to pay for these services. Eleven patients upon whose behalf Medicaid made payments to Dr. Bovee testified below. Seven denied receiving any kind of back treatment from Dr. Bovee. Three stated that he, at most, had touched their shoulders or patted them on the back, and one testified that Dr. Bovee had manipulated her back.

The magistrate dismissed the charges because he heard no testimony linking Dr. Bovee personally with the slips to the billing service. The circuit court ruled that the people had fulfilled their obligation of presenting a sufficient quantum of evidence to establish the *corpus delicti* of the false pretenses counts and probable cause to believe Dr. Bovee committed them and that the magistrate, therefore, had abused his discretion in refusing to bind Dr. Bovee over for trial.

The elements of the crime of false pretenses are: (1) the intent to defraud, (2) the false pretense, and (3) the fraud accomplished. *People v Wilde,* 42 Mich App 514, 517; 202 NW2d 542 (1972). Here, the latter two elements have been clearly established. Billings were submitted for services which were never rendered, and payments were made by Medicaid in reliance upon the false information supplied to it.

The only questions, therefore, are whether Dr. Bovee was responsible for the submission of the false information and whether his actions were done with intent to defraud.

At the preliminary examination Karen Fair testified that when Dr. Bovee hired her to do his billings they discussed the fact that Medicaid would reimburse chiropractors only for spinal manipulations. Ms. Fair further testified that Dr. Bovee specifically instructed her to submit a claim to Medicaid requesting payment for an office visit with two spinal manipulations, unless otherwise instructed, upon her receipt of a "services rendered" slip from his office. Ms. Fair also stated that she never submitted such a claim unless first receiving a slip from Dr. Bovee's office.

A number of Dr. Bovee's patients testified that he treated them for various ailments but never gave them any spinal manipulations. Claim forms were submitted to Medicaid indicating spinal manipulations had been performed on these same patients.

Warrants (similar to a check but issued by the state) along with "remittance advice forms" containing the name of the patient, the date of service, the code number for the type of service and the amount paid were sent by Medicaid to Dr. Bovee. Dr. Bovee stipulated that he negotiated the warrants in question.

Ms. Fair testified that Dr. Bovee called her on several occasions to complain when Medicaid rejected a claim but he never attempted to rectify any improper payment.

It may reasonably be inferred from this circumstantial evidence that Dr. Bovee was responsible for the submission of false claims and that he had the intent to defraud the Medicaid program. The

evidence that he frequently called Ms. Fair to complain when Medicaid rejected a claim indicates he reviewed the records of Medicaid payments and thus was aware he was receiving payments for performing spinal manipulations on certain patients when, in fact, no such services had been rendered to these patients. This evidence, when combined with the evidence of the instructions Dr. Bovee gave to Ms. Fair concerning billing Medicaid, is sufficient to conclude that he had the requisite intent.

The circuit court was correct in determining that the magistrate had abused his discretion in not binding Dr. Bovee over for trial. It is not necessary for the people to establish guilt beyond a reasonable doubt, but only proof that an offense has occurred and the defendant's probable guilt. *People v Medley,* 339 Mich 486; 64 NW2d 708 (1954). The people have met that standard with respect to counts one through three.

## II

### PRACTICING MEDICINE WITHOUT A LICENSE

Practicing medicine without a license is a felony. MCL 338.1816(2); MSA 14.542(16)(2).[1] The practice of medicine was defined by statute to consist of the following:

" 'Practice of medicine' or 'to practice medicine' means to diagnose, treat, prevent, cure, or relieve a human disease, ailment, defect, complaint, or other

---

[1] The activities involved in this case took place in 1976, prior to the effective date of the Public Health Code, 1978 PA 368, which repealed both the Medical Practice Act, MCL 338.1801-338.1818; MSA 14.542(1)-14.542(18) and the chiropractic act, MCL 338.151-338.159; MSA 14.591-14.599. Since it was the provisions of those prior acts that were in effect at the time of the alleged offenses, it is the language of those acts that we construe herein. Accordingly, the statutory citations herein are to the statutory provisions in effect at the time of the alleged offenses.

condition, whether physical or mental, by attendance or advice, or by a device, diagnostic test, or other means, or to offer, undertake, attempt to do, or hold oneself out as able to do, any of these acts." MCL 338.1802(g); MSA 14.542(2)(g).

In the instant case, witnesses testified that Dr. Bovee gave them various medicines or pills for colds, headaches, pain and nasal congestion, topical medicine for rash and a scrape on the arm, and injections. In addition, throat cultures and blood and urine samples were taken.[2]

---

[2] A summary of the various counts and the testimony of the witnesses concerning the allegedly improper services performed by Dr. Bovee is as follows:

| Count | Patient | Services |
|---|---|---|
| 4 | Millie Moore | a) Medicine for a cold<br>b) Injection<br>c) Blood sample |
| 5 | Chequita Moore | a) Medicine for a cold |
| 6 | Willie Moore | a) Pills for a rash<br>b) Throat culture |
| 7 | Raymond Moore | No treatment |
| 8 | Judy Reese | a) Blood sample<br>b) Injection<br>c) Urine sample<br>d) Pills |
| 9 | Beale Reese | a) Injection<br>b) Urine sample<br>c) Throat culture |
| 10 | Tonya Reese | a) Pills<br>b) Cough medicine |
| 11 | Deborah Jacobs | a) Blood sample<br>b) Injections<br>c) Pills<br>d) Urine sample |
| 12 | Jeffrey Jacobs | a) Blood sample<br>b) Topical medicine for arm<br>c) Cold medicine<br>d) Urine sample<br>e) Throat culture |

All of these activities fall within the above definition of the practice of medicine. Hence, unless Dr. Bovee is authorized to do these acts, he may be prosecuted under MCL 338.1816(2).

Exemption from the licensing requirements of the now repealed Medical Practice Act was provided for those persons licensed under other laws, to the extent authorized by such license. MCL 338.1816(1)(g); MSA 14.542(16)(1)(g). Dr. Bovee was licensed under the now repealed chiropractic act. Hence, it is necessary to examine that act to determine the scope of his authority to engage in the complained of activities.

| 13 | Timothy Jacobs | Dismissed on prosecutor's motion |
|----|----------------|----------------------------------|
| 14 | Theresa Tyson | a) Iron shots<br>b) Antibiotic pills<br>c) Urine sample<br>d) Blood sample |
| 15 | Tony Tyson | a) Took temperature |
| 16 | Flora Lord | a) Urine sample<br>b) Throat culture<br>c) Pain pills<br>d) Pills for nasal congestion |
| 17 | Tomaika Lord | a) Throat culture<br>b) Cough medicine |
| 18 | Frances Green | a) Diet pills<br>b) Injections<br>c) Blood sample |
| 19 | Brenda Cox | a) Injections<br>b) Diet pills<br>c) Blood sample<br>d) Throat culture<br>e) Urine sample<br>f) Flu medicine |
| 20 | Janice Peterson | a) Urine sample<br>b) Blood sample<br>c) Injection<br>d) Diet pills |

Section 6 of the chiropractic act established the parameters of Dr. Bovee's license:

"The license provided for in this act shall entitle the holder thereof to practice chiropractic in the state of Michigan, and for the purpose of this act chiropractic is defined as 'the locating of misaligned or displaced vertebrae of the human spine, the procedure preparatory to and the adjustment by hand of such misaligned or displaced vertebrae and surrounding bones or tissues, for the restoration and maintenance of health.' A licensed doctor of chiropractic under this act may use x-ray and such analytical instruments as are approved by the Michigan board of chiropractic examiners in the examination of patients solely for the purpose of locating misaligned or displaced vertebrae of the human spine and for the procedures preparatory thereto." MCL 338.156; MSA 14.596.[3]

---

[3] The definition of chiropractic was changed subsequent to the events in this case. The new definition is contained in § 16401 of the Public Health Code, effective September 30, 1978. It reads:

"(a) 'Chiropractor', 'chiropractic physician', 'doctor of chiropractic', or 'd.c.' means an individual licensed under this article to engage in the practice of chiropractic.

"(b) 'Practice of chiropractic' means that discipline within the healing arts which deals with the nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes:

"(i) Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.

"(ii) The adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.

"(iii) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine.

"(2) In addition to the definitions in this part, article 1 contains general definitions and principles of construction applicable to all articles in this code and part 161 contains definitions applicable to this part." MCL 333.16401; MSA 14.15(16401).

In dismissing the counts of practicing medicine without a license, the magistrate held that the acts in which Dr. Bovee engaged were procedures preparatory to spinal manipulation, and the circuit court agreed with that determination.

The magistrate and circuit court erred as a matter of law in finding that defendant's actions were part of the procedure preparatory to spinal manipulations. The term "procedure preparatory to" did not give chiropractors the authority to dispense any type of medicine, prescription or otherwise; neither did it allow them to perform injections, take blood samples or perform diagnostic tests other than those necessary to determine the existence of misaligned or displaced vertebrae.

In *Attorney General v Raguckas,* 84 Mich App 618, 624, 625; 270 NW2d 665 (1978), this Court ruled that chiropractors were not authorized to dispense prescription drugs or perform acupuncture. In so ruling the Court made the following observations:

"Defendants' position that they should be permitted to dispense drugs is directly contrary to the philosophical foundation of the chiropractic profession. The Michigan statutory definition is in accord with the universally accepted view that the chiropractic profession is limited to the manual adjustment of the spine. Drugs play no part in the chiropractor's approach to health.

\* \* \*

"It is the conclusion of this Court that the Legislature of this state intended to authorize the practices of chiropractic as generally recognized and understood. The contention that the statutory language 'procedure preparatory to' manual adjustment authorizes the chiropractor to dispense drugs is violative of the intent of the Michigan Legislature. A logical extension of this argument would allow chiropractors to do anything as long as it was somehow 'preparatory to' the manual

adjustment of spinal vertebrae. Accordingly, we rule, as a matter of law, that chiropractors are not authorized to dispense drugs to their patients."

While the Court in *Raguckas* was concerned with prescription drugs, we conclude that the rationale of that case is likewise applicable to nonprescription medicines.

In *State v Wilson,* 11 Wash App 916; 528 P2d 279 (1974), the Washington Supreme Court ruled that chiropractors may not give or prescribe minerals, vitamins or food supplements. The Court noted that while these items are available without prescription in retail stores they may, nevertheless, be dangerous when improperly used.

We agree with this analysis and conclude that the Michigan Legislature did not intend that chiropractors use any medicine given internally or externally for the treatment of disease or other human ailment.

Dr. Bovee also gave his patients injections and drew blood samples. These activities involved penetration of the skin and, therefore, were surgical acts outside the scope of chiropractic. *Raguckas, supra,* at 626.

Finally, Dr. Bovee took throat cultures and urine samples for analytical purposes. Whether such diagnostic tests were within the scope of chiropractic has not previously been ruled upon in. this state.

At least one state has ruled that chiropractors are not authorized to collect human specimens, including urine and blood samples. *Association of Chiropractors, Inc v Jefferson County Medical Society,* 549 SW2d 817, 821 (Ky, 1977).

Appellant contends that he had a duty to ascertain whether a patient's ailments were of a type to

which chiropractic might be applied, *Janssen v Mulder,* 232 Mich 183; 205 NW 159 (1925), and that the use of such diagnostic techniques was necessary for making such a determination. While analysis of human specimens may reveal the existence of organic problems untreatable by chiropractic, this is true for all diagnostic tests used by members of the medical profession. We do not believe the Legislature intended to authorize chiropractors to engage in general diagnostic techniques. Had such a result been intended, it could have been clearly stated, as was done with respect to the use of x-rays. Rather than authorizing general diagnostic techniques, the statute limited chiropractors to those methods which might reveal the existence of misaligned or displaced vertebrae.

We fail to see how taking urine samples or throat cultures will reveal the existence of subluxations. Hence, we conclude that such activities were outside the scope of a chiropractor's authority.

Appellant contends, nevertheless, that the statute was so vague that a practitioner had to guess at its meaning and that, therefore, criminal prosecution is barred upon due process grounds.

While appellant's arguments might have merit in a different factual context, the statute limited chiropractic to "adjustment by hand" of misaligned or displaced vertebrae and the "procedure preparatory to" such manual adjustment. The testimony of Dr. Bovee's patients indicates that they were treated for a variety of ailments by methods other than manual adjustment of the spine. Even assuming that the methods used by Dr. Bovee could in some instances be construed to be preparatory to manual adjustment, it is evident that under the facts of this case that was not the

situation. No manual adjustment was ever discussed, suggested, or done;[4] nor were the patients advised that their problems were not treatable by chiropractic. Hence, the facts indicate that appellant's activities were not in any way preparatory to manual adjustment of the spine and were, therefore, clearly outside the statutory limits imposed upon chiropractors.

Appellant also asserts that the chiropractic board adopted resolutions declaring that the complained of activities were within the scope of chiropractic. The scope of chiropractic was defined by statute, and the board was without authority to expand that definition by resolution. While the act gave the board the authority to promulgate rules approving the use of certain analytical instruments, MCL 338.156; MSA 14.596, MCL 338.152; MSA 14.592, during the period in question no such rules were in effect.

Accordingly, the decision of the circuit court ordering the magistrate to bind appellant over for trial on the charges of obtaining money under false pretenses, counts one through three, is affirmed. In reference to the charges of practicing medicine without a license, the decision as to counts 7 and 15 is affirmed, there being no evidence that appellant engaged in any acts which the attorney general contends were outside the scope of chiropractic. See note 2, *supra.* With respect to the remaining counts, 4 through 6, 8 through 12, 14, and 16 through 20, the circuit court is reversed and the case is remanded for proceedings consistent with this opinion.

[4] Deborah Jacobs testified that she did receive some spinal manipulations for a back problem. However, her testimony also indicates that Dr. Bovee treated her for other unrelated problems by methods other than spinal adjustments.