COTTER v BLUE CROSS AND BLUE SHIELD OF MICHIGAN

Docket No. 78-1957. Submitted October 9, 1979, at Detroit.—Decided December 5, 1979. Leave to appeal applied for.

Robert Cotter, Nancy Cotter and Shirley Vasileff, representing all Blue Cross and Blue Shield of Michigan subscribers, brought a class action in Wayne Circuit Court against Blue Cross and Blue Shield of Michigan and against Thomas Jones, in his capacity as Insurance Commissioner, seeking to enjoin Blue Cross and Blue Shield from excluding from its insurance coverage certain services rendered by chiropractors. Horace W. Gilmore, J., entered an order enjoining Blue Cross and Blue Shield from excluding from coverage the services in quesion. After a show cause hearing, Judge Gilmore ordered the matter referred to the Insurance Commissioner. The Commissioner held a full hearing as ordered and then issued an order prohibiting Blue Cross and Blue Shield from reimbursing its subscribers for the services in question. Subsequently, the defendants' motions for summary judgment were granted and the temporary injunction was dissolved. Plaintiffs appeal, alleging that 1) the circuit court did not have primary jurisdiction to decide the case, and 2) the trial court erred in making its own determination of the scope of chiropractic. *Held:*

1. The Michigan State Board of Chiropractic Examiners was not authorized by statute to define the scope of chiropractic. The trial court properly exercised jurisdiction over the matter.

2. Statute interpretation is a legal question and is therefore a matter for the court. There are prior cases determining the scope of chiropractic which have determined that the practices in question were not within the scope of chiropractic. Based upon case precedent, the plaintiffs had failed to state a claim

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 788, 791.
[2, 5] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 23.
[3] 73 Am Jur 2d, Statutes § 142.
[4] 61 Am Jur 2d, Pleadings § 229 *et seq.*
    73 Am Jur 2d, Summary Judgment §§ 5, 29.

upon which relief could be granted and summary judgment for defendants was proper.

Affirmed.

1. Administrative Law — Courts — Doctrine of Primary Jurisdiction.

The doctrine of primary jurisdiction for an administrative agency is invoked where the agency has been authorized by statute to determine factual issues raised in the pleadings.

2. Physicians and Surgeons — Chiropractic Act — Scope of Practice — Chiropractic Board.

The scope of chiropractic practice was defined by the now repealed chiropractic act and the chiropractic board was without authority to expand that definition by resolution.

3. Statutes — Statutory Interpretation — Legal Questions — Matters for the Court.

Statute interpretation is a legal question and is therefore a matter for the court.

4. Motions — Summary Judgment — Failure to State a Claim — Sufficiency of Pleadings — Contracts — Court Rules.

A motion for summary judgment on the ground that plaintiff failed to state a claim upon which relief can be granted challenges the legal sufficiency of the pleadings alone and is to be tested by whether, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery; however, in an action based upon a contract the court may examine the contract in conjunction with the motion for a summary judgment.

5. Physicians and Surgeons — Chiropractic Act — Nonchiropractic Services — Public Health Code.

Emergency first aid services for nonspinal injuries, diagnostic x-rays of other than the spine ordered and/or performed by a chiropractor, nonspinal medical emergencies, blood handling and diagnostic laboratory services ordered and/or performed by a chiropractor were practices not within the scope of chiropractic under the chiropractic act which was repealed with the enactment of the Public Health Code (MCL 338.156; MSA 14.596, now repealed).

*Durant & Durant, P.C.,* for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Theodore W. Swift* and *David VanderHagen),* for defendant Blue Cross and Blue Shield.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Judith I. Blinn,* Assistants Attorney General, for defendant Insurance Commissioner.

Before: J. H. Gillis, P.J., and V. J. Brennan and MacKenzie, JJ.

V. J. Brennan, J. On July 1, 1977, the plaintiffs, representing all Blue Cross and Blue Shield of Michigan (BC/BS) subscribers, filed a class action in Wayne County Circuit Court. An *ex parte* restraining order to show cause was issued on July 1, 1977. The order enjoined BC/BS from excluding certain services rendered by chiropractors from insurance coverage. A show cause hearing was held on July 8, 1977. An order was entered on August 30, 1977, referring the matter to the defendant Thomas Jones, in his capacity as Insurance Commissioner.

The Commissioner held a full hearing on the matter on October 12, 1977, as ordered. The plaintiffs and BC/BS were present and were allowed to present evidence. On January 31, 1978, Jones issued an order prohibiting BC/BS from reimbursing subscribers for the services in question.

The defendants brought motions for summary judgment in Wayne County Circuit Court. On March 21, 1978, the defendants' motions for summary judgment were granted and the temporary injunction was dissolved. A judgment to that effect was entered on April 20, 1978. The plaintiffs now appeal this judgment.

Under the terms of the plaintiffs' contract with BC/BS, services rendered by physicians are reimbursable under certain conditions. The contract defines the term "physician" as follows:

"A 'Physician' is a doctor of medicine or osteopathy legally qualified and licensed to practice medicine and perform surgery at the time and place surgeries are performed. For the purposes hereof, a podiatrist, as defined in Act 115 Public Acts Michigan 1915 as amended and licensed thereunder, or licensed under similar Acts of other States wherein services are performed, or a doctor of chiropractic as defined in Act 145 Public Acts Michigan 1933 as amended and licensed thereunder, or licensed under similar Acts of other States wherein services are performed, will be deemed to be a physician *if and to the extent that he shall render services hereunder which he is legally qualified to perform under said Act.*" (Emphasis added.)

Section 6 of the chiropractic act establishes the lawful scope of chiropractic practice in Michigan:

"Sec. 6 * * * for the purpose of this act chiropractic is defined as 'the locating of misaligned or displaced vertebrae of the human spine, the procedure preparatory to and the adjustment by hand of such misaligned or displaced vertebrae and surrounding bones or tissues, for the restoration and maintenance of health.' A licensed doctor of chiropractic under this act may use x-ray and such analytical instruments as are approved by the Michigan board of chiropractic examiners in the examination of patients solely for the purpose of locating misaligned or displaced vertebrae of the human spine and for the procedures preparatory thereto." MCL 338.156; MSA 14.596.[1]

---

[1] The definition of chiropractic was changed subsequent to the events in this case. The new definition is contained in § 16401 of the Public Health Code, effective September 30, 1978. It reads:

"(a) 'Chiropractor', 'chiropractic physician', 'doctor of chiropractic', or 'd.c.' means an individual licensed under this article to engage in the practice of chiropractic.

"(b) 'Practice of chiropractic' means that discipline within the

The basis for the complaint is that the defendants BC/BS sent a notice to the plaintiffs and all other subscribers stating that the following services performed by chiropractors would be excluded from coverage commencing July 1, 1977:

"1. Emergency first-aid services for non-spinal injuries.

"2. Diagnostic x-rays of other than the spine ordered and/or performed by a chiropractor.

"3. Medical emergencies (non-traumatic) of any type.

"4. Blood handling charges.

"5. Diagnostic laboratory services ordered and/or performed by a chiropractor."

The complaint alleges that exclusion of these benefits would reduce the choice of medical care available to the plaintiffs in violation of the statute regulating medical care insurance corporations, MCL 550.301, *et seq.;* MSA 24.591, *et seq.* The plaintiffs also allege in the complaint that

healing arts which deals with the nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes:

"(i) Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.

"(ii) The adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.

"(iii) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine.

"(2) In addition to the definitions in this part, article 1 contains general definitions and principles of construction applicable to all articles in this code and part 161 contains definitions applicable to this part." MCL 333.16401; MSA 14.15(16401).

these changes unilaterally changed the conditions of their contract with BC/BS, thereby raising the rates that plaintiffs paid for the services which are covered.

The key issue is whether or not chiropractors are authorized under the Chiropractic Act to perform the services that BC/BS wishes to exclude from coverage. If a chiropractor may legally perform those services outlined in the statement of facts, BC/BS is obligated under the contract to reimburse its subscribers for those services. If chiropractors are not authorized to perform those services, a chiropractor performing those services does not fall within the contract definition of "physician". In that case, BC/BS is not obligated under the contract to pay for those services.

The lower court granted summary judgment based upon the failure to state a claim upon which relief could be granted. Therefore, GCR 1963, 117.2(1) is the controlling court rule. The plaintiffs allege that the lower court considered the wrong information when granting summary judgment under GCR 1963, 117.2(3), which allows for summary judgment where there is no genuine issue of a material fact. As the judgment was granted under the other subrule, these allegations of error are without merit.

The plaintiffs also allege that the lower court did not have primary jurisdiction to decide the case. They assert that the Michigan State Board of Chiropractic Examiners has primary jurisdiction to interpret the Chiropractic Act and define the parameters of the profession. The doctrine of primary jurisdiction is invoked where the regulatory agency has been authorized by statute to determine factual issues raised in the pleadings. *Far East Conference v United States,* 342 US 570, 574,

575; 72 S Ct 492; 96 L Ed 576 (1952), cited with approval in *Attorney General v Raguckas,* 84 Mich App 618, 621-622; 270 NW2d 665 (1978). The board is not authorized under the statute to define the scope of chiropractic. The same issue was addressed in *Attorney General v Recorder's Court Judge,* 92 Mich App 42, 57; 285 NW2d 53 (1979), where the Court said,

"The scope of chiropractic was defined by statute, and the board was without authority to expand that definition by resolution."

See also, *Attorney General v Raguckas,* at 622.

Finally, the plaintiffs allege that the trial court erred in making its own determination of the scope of chiropractic. The plaintiffs again allege that the board has primary jurisdiction and that the lower court did not possess the requisite technical knowledge to ascertain what is or is not included within the scope of chiropractic. This allegation of error is also without merit. The Court in both *Raguckas* and *Recorder's Court Judge* disagreed with the board's interpretation of the scope of chiropractic and went on to interpret the statute as not including the services in question. Statute interpretation is a legal question and is therefore a matter for the court.

GCR 1963, 117.2(1) states that the movant is entitled to summary judgment in his favor when the opposing party has failed to state a claim upon which relief can be granted. A motion based on GCR 1963, 117.2(1) challenges the legal sufficiency of a plaintiff's complaint and is to be considered by an examination of the pleadings alone. It is the duty of the reviewing court to accept as true the well-pleaded facts in the plaintiff's complaint and determine whether those claims are so clearly

unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Koenig v Van Reken,* 89 Mich App 102, 104; 279 NW2d 590 (1979). In a case based upon contract, as here, the court may examine the contract in conjunction with the motion for summary judgment. *Soloman v Western Hills Development Co,* 88 Mich App 254, 256; 276 NW2d 577 (1979).

We find that the lower court judgment is not erroneous. Based upon past interpretation of this very statute by this Court, the statute is to be construed strictly. There is Court of Appeals authority for the lower court's determination that some of the practices are not within the scope of chiropractic. *Raguckas, supra, Recorder's Court Judge, supra.* The remaining two practices involving emergencies are also not within the scope of chiropractic, unless they involve the spine. Therefore, the summary judgment is affirmed.

No costs, a public question being involved.