SECOND BENTON HARBOR CORPORATION v ST PAUL TITLE
INSURANCE CORPORATION

Docket No. 62572. Submitted March 4, 1983, at Grand Rapids.—
Decided June 21, 1982.

Benton Harbor K. M. Associates (KM), a limited partnership, purchased a parcel of real estate in the City of Benton Harbor. At the time of sale, KM purchased from Burton Abstract & Title Company, predecessor in interest to defendant St. Paul Title Insurance Company (St. Paul), a policy of title insurance covering the subject property. This policy incorporated and relied upon a 1963 survey of the property performed by G. L. Wightman, who plaintiff alleges is a former employee of defendant Wightman & Associates, Inc. On March 6, 1972, KM entered into a lease agreement with Second Benton Harbor Corporation. Second Benton Harbor as tenant under the lease was to manage the properties for and be the agent of KM. On August 17, 1978, KM, while still owner of the property, was notified by the owner of the adjoining property, Farmers & Merchants State Bank (Farmers), of the existence of a 36-inch storm sewer which originated underneath KM's property and extended approximately 120 feet onto the adjoining property owned by Farmers. This was the first point at which KM became aware of the existence of the storm sewer. Neither the policy of title insurance issued by defendant St. Paul nor the survey conducted by G. L. Wightman revealed the existence of the storm sewer or noted an easement for it. Farmers requested that an easement be obtained or that the discharge point be removed from their property. KM, while still owner of the property, filed a claim with St. Paul concerning the storm sewer. St. Paul rejected it. After KM had filed its claim with St. Paul but before St. Paul had rejected it, KM entered into an agreement with its lessee, Second Benton Harbor, authorizing Second Benton Harbor to bring suit, if necessary, on KM's behalf, to resolve the matter. The agreement stated that Second Benton Harbor would bear whatever costs were necessary and

REFERENCES FOR POINTS IN HEADNOTES
[1] 61A Am Jur 2d, Pleading §§ 71 *et seq.*, 230 *et seq.*
[2] 61A Am Jur 2d, Pleading § 319.

would retain whatever monies were recovered. While the matter was still unresolved, KM conveyed the property by quitclaim deed to Albert J. Ades and Robert P. Murray. Second Benton Harbor retained its status as lessee. Second Benton Harbor purchased an easement for the storm sewer from Farmers for $14,025. Second Benton Harbor then commenced an action in the Berrien Circuit Court against St. Paul, Burton Abstract and Wightman & Associates, Inc., alleging breach of contract for defendants' failure to discover the existence of the storm sewer and the lack of an easement for it. Defendants challenged the complaint by motions for summary judgment. In response to the motions, plaintiff moved for leave to amend its complaint by adding KM as a party plaintiff and by alleging additional facts. Plaintiff's proposed amended complaint was an attempt to clarify the factual situation for the court. The proposed amended complaint added KM as a party plaintiff but failed to adequately explain KM's relationship with Second Benton Harbor, or explain precisely who suffered the loss. The trial court, Chester J. Byrns, J., denied plaintiff's motion to amend its complaint and granted summary judgment for defendants. On a motion for rehearing, plaintiff brought forth another proposed amended complaint which set forth additional facts explaining the relationship between KM and Second Benton Harbor, the assignment of KM's cause of action to Second Benton Harbor, and the acquisition of the easement by Second Benton Harbor. The trial court denied the motion for rehearing. Plaintiff appealed. *Held:*

1. A motion for summary judgment on the ground that plaintiff failed to state a claim upon which relief can be granted challenges the legal sufficiency of the pleadings alone and is to be tested by whether, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. However, in an action based upon a contract the court may examine the contract in conjunction with the motion for summary judgment. A court, on a motion to amend pleadings, should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face and it would be futile to allow the amendment. The policy of insurance contained the following provision. "The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by

such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest of the indebtedness secured by a purchase money mortgage given to such insured". The grant of summary judgment was proper since the insured no longer had an interest in the property and had suffered no loss.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENT — FAILURE TO STATE CLAIM — PLEADING — CONTRACTS — COURT RULES.

A motion for summary judgment on the ground that plaintiff failed to state a claim upon which relief can be granted challenges the legal sufficiency of the pleadings alone and is to be tested by whether, accepting all well-pleaded facts as true, the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery; however, in an action based upon a contract the court may examine the contract in conjunction with the motion for summary judgment (GCR 1963, 117.2[1]).

2. PLEADING — AMENDMENT OF PLEADINGS — MERITS OF CLAIM.

A court, on a motion to amend pleadings, should ignore the substantive merits of a claim or defense unless it is legally insufficient on its face and it would be futile to allow the amendment.

*Hiller, Larky & Hoekenga* (by *Steven J. Amberg*), for plaintiff.

*Ryan, McQuillan, Vander Ploeg & Fette* (by *Charles H. Mostov*), for defendant.

Before: D. E. HOLBROOK, JR., P.J., and D. F. WALSH and J. C. KINGSLEY,* JJ.

D. E. HOLBROOK, JR., P.J. Plaintiff appeals as of right from a trial court order granting summary judgment for defendants and denying plaintiff leave to amend its complaint.

Benton Harbor K. M. Associates (KM), a limited

---

* Circuit judge, sitting on the Court of Appeals by assignment.

partnership, purchased a parcel of real estate in the City of Benton Harbor. At the time of sale, KM purchased from Burton Abstract & Title Company, predecessor in interest to defendant St. Paul Title Insurance Company (St. Paul), a policy of title insurance, dated April 4, 1972, covering the subject property. This policy incorporated and relied upon a 1963 survey of the property performed by G. L. Wightman, who plaintiff alleges is a former employee of defendant Wightman & Associates.

On March 6, 1972, KM entered into a lease agreement with Second Benton Harbor Corporation (Second Benton Harbor), a Michigan corporation. Second Benton Harbor as tenant under the lease was to manage the properties for and be the agent of KM.

On August 17, 1978, KM, while still owner of the property, was notified by the owner of the adjoining property, Farmers & Merchants State Bank (Farmers), of the existence of a 36-inch storm sewer which originated underneath KM's property and extended approximately 120 feet onto the adjoining property owned by Farmers. This was the first point at which KM became aware of the existence of the storm sewer. Neither the policy of title insurance issued by defendant St. Paul nor the survey conducted by G. L. Wightman revealed the existence of the storm sewer or noted an easement for it. Farmers requested that an easement be obtained or that the discharge point be removed from their property.

On May 24, 1979, KM, while still owner of the property, filed a claim with St. Paul concerning the storm sewer. St. Paul rejected same on July 13, 1979.

On July 5, 1979, after KM had filed its claim

with St. Paul but before St. Paul had rejected it, KM entered into an agreement with its lessee, Second Benton Harbor, authorizing Second Benton Harbor to bring suit, if necessary, on KM's behalf, to resolve the matter. The agreement stated that Second Benton Harbor would bear whatever costs were necessary and would retain whatever monies were recovered.

On October 2, 1979, while the matter was still unresolved, KM conveyed the property by quit-claim deed to Albert J. Ades and Robert P. Murray. Second Benton Harbor retained its status as lessee.

On January 7, 1981, Second Benton Harbor purchased an easement for the storm sewer from Farmers for $14,025. Payment was made by Realty Investors Development Corporation, the parent corporation of Second Benton Harbor. Second Benton Harbor then commenced this action against defendants alleging breach of contract for defendants' failure to discover the existence of the storm sewer and the lack of an easement for it.

Defendants challenged the complaint by motions for summary judgment. In response to the motions, plaintiff Second Benton Harbor moved for leave to amend its complaint by adding KM as a party plaintiff and by alleging additional facts. Plaintiff's proposed amended complaint was an attempt to clarify the factual situation for the court. The proposed amended complaint added KM as a party plaintiff but failed to adequately explain KM's relationship with Second Benton Harbor, or explain precisely who suffered the loss. The trial court denied plaintiff's motion to amend its complaint and granted summary judgment for defendants.

On a motion for rehearing, plaintiff brought

forth another proposed amended complaint which set forth additional facts explaining the relationship between KM and Second Benton Harbor, the assignment of KM's cause of action to Second Benton Harbor, and the acquisition of the easement by Second Benton Harbor. The trial court denied the motion for rehearing.

Plaintiff first claims the trial court erred in granting summary judgment for defendants under GCR 1963, 117.2(1). A motion based on GCR 1963, 117.2(1) challenges the legal sufficiency of the complaint and is to be considered by an examination of the pleadings alone. However, in an action based upon a contract the court may examine the contract in conjunction with the motion for summary judgment. *Cotter v Blue Cross & Blue Shield of Michigan,* 94 Mich App 129, 136; 288 NW2d 594 (1979). It is the duty of the reviewing court to accept as true all well-pleaded facts in the complaint and determine whether those claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Duhame v Kaiser Engineering of Michigan, Inc,* 102 Mich App 68, 71; 300 NW2d 737 (1980).

In the instant case, the trial court considered plaintiff's proposed amended complaint upon defendants' motion for summary judgment, and then considered another proposed complaint on the motion for rehearing. Each time the trial court found that neither plaintiff Second Benton Harbor nor proposed additional plaintiff KM could state a claim upon which relief could be granted.

The trial court found that the policy of title insurance did not run to plaintiff Second Benton Harbor and whatever rights KM may have had under the policy were extinguished when it con-

veyed the property to third parties Ades and Murray in October, 1979. This same conveyance additionally terminated whatever interest plaintiff Second Benton Harbor may have had as assignee or agent of KM. In reaching this result, the trial court relied upon ¶ 2, Conditions and Stipulations, of the policy of insurance. Paragraph 2 states in pertinent part:

"2. CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE

"The coverage of this policy shall continue in force as of Date of Policy in favor of an insured so long as such insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchaser from such insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to such insured."

The court reasoned in applying this provision that, once KM had transferred its rights to the property to third parties, the provisions of ¶ 2 became a contractual bar to the instant action.

We agree with the trial court. Defendant St. Paul's obligation terminated at the same time as no reissue premium was paid by Ades and Murray, and KM did not transfer the property in such a way as to remain liable by covenants of warranty made to the grantees. At the time of the conveyance, neither KM nor Second Benton Harbor had suffered any damages nor had they purchased an easement across the adjoining property. Additionally, no judgment existed against them in favor of the adjoining property owner. The contract of

insurance specifically excludes from coverage any claims "resulting in no loss or damage to the insured claimant". Furthermore, KM assured itself that it would not suffer future damages by conveying the property by quitclaim deed, without any covenants of warranty. KM has not and never will suffer any loss. Plaintiff Second Benton Harbor's authority to prosecute any cause of action on KM's part amounts to authority to prosecute nothing. After the date of the conveyance there no longer existed any possibility that KM would suffer any loss that it had insured against.

Whatever authority Second Benton Harbor had from KM to prosecute any cause of action clearly ended when KM conveyed the property and the lease interest to Ades and Murray. St. Paul's obligations to KM terminated at that time. The trial court did not err in granting defendants' motions for summary judgment.

Second, plaintiff claims the trial court erroneously granted summary judgment for defendants on the ground that plaintiff failed to raise a genuine issue of material fact.

A challenge under GCR 1963, 117.2(3) attacks the factual sufficiency of the claim presented. The test the court must apply is "whether the kind of record which might be developed, within the limits indicated by the pleadings * * * would leave an issue upon which reasonable minds might differ or upon which a directed verdict would be proper". *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973), quoting 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 362 and 1972 Supp, pp 81, 83.

For the reasons stated in Issue I we are of the opinion that the trial court acted properly in granting summary judgment for defendants.

While, as a rule, summary judgment is not favored, *Rizzo, supra,* it was appropriate in the instant case.

Finally, plaintiff claims the trial court erred in denying plaintiff's motion to amend its complaint and add an additional party plaintiff. We disagree, for in doing so the trial court carefully considered both plaintiff's proposed amended complaints and still found that summary judgment for defendants was proper. Hence, it would have been futile to allow the amendments. See *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973). We find no reversible error.

Affirmed. Costs to appellees.